FILED & JUDGMENT ENTERED
Christine F. Winchester

July 29 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
Ashley Austin Edwards
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>**Ryan Lashon Ford,**<br><br>Debtor. | Case No. 24-31129<br>Chapter 7 |
| **Melanie D. Johnson Raubach,** *solely in her capacity as Chapter 7 bankruptcy trustee for the Estate of Ryan Lashon Ford*,<br><br>Plaintiff,<br><br>v.<br><br>**Holt Solutions, LLC,**<br><br>Defendant. | Adv. Proc. No. 25-30332 |

### OPINION AND ORDER SANCTIONING DEBTOR FOR FAILURE TO COMPLY WITH OMNIBUS ORDER AND CONTEMPT ORDER

**THIS MATTER** is before the Court upon the *Order Finding Debtor in Civil Contempt* (the "Contempt Order"). [D.I. 132].[1] The Court set a compliance hearing on the Contempt Order for July 21, 2025 (the "July 21st Hearing"). At the July 21st Hearing, the Debtor appeared *pro se*;

---

[1] References to docket numbers in this opinion and order correspond to the docket numbers in the base bankruptcy case (#24-31129).

1

Heather W. Culp appeared on behalf of the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator"); and Melanie D. Johnson Raubach appeared on behalf of herself as the bankruptcy trustee in this case (the "Chapter 7 Trustee," and together with the Bankruptcy Administrator, the "Parties"). Once the hearing concluded, the Court took the matter under advisement and now renders the following opinion.

## BACKGROUND

The Debtor filed the voluntary bankruptcy petition on December 23, 2024 (the "Petition Date"), under Chapter 7 of the Bankruptcy Code. [D.I. 1]. "Chapter 7 . . . is the 'operative' chapter of the Bankruptcy Code that normally governs [the] liquidation of a debtor['s]" estate. 6 Collier on Bankruptcy ¶ 700.01 (16th ed. 2025). In Chapter 7 cases, a trustee collects, liquidates, and distributes the non-exempt property of the debtor. *Id.* If the debtor is an individual, a Chapter 7 case culminates in the discharge of the debtor. *Id.* Given the relatively straightforward process of liquidating a debtor's assets and distributing those assets to creditors, Chapter 7 cases often move quickly and efficiently and allow a debtor to receive a discharge within a few months. There are usually very few pleadings and docket entries in a typical Chapter 7 case. The case at hand is not a typical case.

**I.** **Filings**

Since March 31, 2025, less than 4 months ago, the Debtor has filed at least a dozen motions. These include a motion to dismiss the bankruptcy proceeding, a motion to appear remotely, a motion to bring a laptop into the courthouse, two motions to convert the case to one under Chapter 11 of the Bankruptcy Code, two motions to declare that certain property is tribal property and not property of the bankruptcy estate, a motion to convert the case to one under Chapter 13 of the Bankruptcy Code, a motion to refer certain matters to mediation, a motion to compel the Chapter 7 Trustee to provide a settlement amount to the Debtor, a motion for a protective order to limit

2

discovery, and a motion to recuse the Parties. This list does not include several other motions, nor does it include the numerous responses, replies, and memoranda that the Debtor has filed.[2] Between April 7, 2025, and July 21, 2025, the Court has conducted a hearing in this case almost every two weeks to address these motions. As of the date of this opinion and order, and after notice and a hearing on each motion, the Court has found that each of these motions lacks merit and has denied each motion accordingly.[3]

## II.     Hearing on May 27, 2025

Several important facts have come to light through these proceedings. For example, at the hearing on May 27, 2025 (the "May Hearing"), the Debtor testified that, prior to filing for bankruptcy, she transferred ownership of two properties to Holt Solutions, LLC, a corporate entity that the Debtor solely owns. The Chapter 7 Trustee initiated an adversary proceeding against Holt Solutions, LLC (#25-03032) (the "Holt Solutions Adversary Proceeding"), asserting that the transfer of these properties was fraudulent and that the properties should be brought back into the bankruptcy estate for the benefit of the Debtor's creditors, among other causes of action.

The Debtor has filed numerous responses and objections in the bankruptcy case and in the Holt Solutions Adversary Proceeding on behalf of Holt Solutions, LLC, fighting the Chapter 7 Trustee's allegations and seeking to keep the property outside of the bankruptcy estate. In doing so, the Debtor repeatedly argued in her filings and in court on behalf of Holt Solutions, LLC. By attempting to represent Holt Solutions, LLC in this case, the Debtor has engaged in the unauthorized practice of law. The Court repeatedly and carefully at multiple hearings explained and warned the Debtor that she may not represent Holt Solutions, LLC. The Debtor consistently

---

[2] On June 27, 2025, the Debtor filed a document in the district court titled *Notice of Motion to Withdraw a reference of Bankruptcy Petition*, through which the Debtor seeks to have the district court withdraw its reference of this case to the bankruptcy court. [D.I. 121].
[3] The Court has not yet heard arguments on or decided the *Motion for Recusal of Trustee and Bankruptcy Administrator*, [D.I. 131], and reserves judgment on such motion.

3

ignored the Court warnings, which ultimately led to the Court entering the *Order from Omnibus Hearing on June 23, 2025* (the "Omnibus Order"), that barred the Debtor from filing on behalf of Holt Solutions, LLC, or representing that entity in this case or the Holt Solutions Adversary Proceeding. [D.I. 111].

Additionally, the Debtor testified at the May Hearing that there were certain bank accounts that the Debtor held and controlled on the Petition Date, as well as post-petition transfers of property out of the estate, that were not previously disclosed. The Debtor also testified that she has taken and paid for educational courses through her asserted tribe related to cosmology, genealogy, and *jurisprudence* (the "Courses"). Given the Court's concerns with the failure to disclose information required by the Bankruptcy Code, as well as the potential unauthorized practice of law—both by the Debtor and by individuals who may be teaching or instructing through the jurisprudence course—the Court directed the Debtor at the May Hearing to immediately produce all information regarding the bank accounts, the Courses, and other pertinent information, per the Parties' reasonable request.

### III. Hearing on June 23, 2025

At the hearing on June 23, 2025 (the "June Hearing"), the Debtor acknowledged that she had not produced any documentation to the Parties since the May Hearing. The Debtor also initially stated that she did not recall sending multiple emails to the Chapter 7 Trustee in the following week, which the Chapter 7 Trustee read into the record at the June Hearing. The Debtor subsequently acknowledged that she had emailed and informed the Chapter 7 Trustee that she would produce documentation at some point. The Debtor requested that a mediator be appointed and that a settlement amount be provided to allow the Debtor to pay off all creditors in a lump sum. The Parties informed the Debtor that that was not possible because they could not be fully aware of the Debtor's liabilities or, more specifically, who may be a rightful creditor until they

received the bank records and other pertinent information, which the Debtor had failed to produce.[4]

Following the June Hearing, the Court entered the Omnibus Order, which provided that

> the Debtor shall produce (1) all documentation regarding the Debtor's bank accounts; (2) all documentation regarding the bank accounts of Holt Solutions, LLC; (3) all tax returns for Holt Solutions, LLC; (4) any lease agreements for the property at 3819 Yorkford Drive, Charlotte, North Carolina, 28269; (5) any lease agreements for the property at 6415 Nevin Glen Drive, Charlotte, North Carolina, 28269; and (6) all documentation regarding courses that the Debtor has taken through the Debtor's asserted tribe.

[D.I. 111 at ¶ 6]. The Omnibus Order also provided:

> 7. The Debtor shall submit the documentation and information specified in paragraph 6 of this order to the Bankruptcy Administrator and Chapter 7 Trustee by June 27, 2025;
> 8. Either the Bankruptcy Administrator or the Chapter 7 Trustee shall file a compliance report after June 27, 2025, informing the Court of the Debtor's compliance with the requirements set forth in paragraph 6 of this order[ (the "First Status Report").]

[*Id.* ¶¶ 7–8]. The Omnibus Order also set a compliance hearing for July 7, 2025 (the "July 7th Hearing").

### IV. Hearing on July 7, 2025

In preparation for the July 7th Hearing, the Parties filed the First Status Report and asserted that the Debtor "fail[ed] to submit any documentation or information to the Bankruptcy Administrator and . . . fail[ed] to submit to the Trustee documentation or information" on numerous items specifically identified in paragraph 6 of the Omnibus Order. [D.I. 125 at *5]. The Parties also requested that the Court "[f]ind the Debtor in civil contempt of the Omnibus Order and permit the Debtor to purge her contempt by paying the Bankruptcy Clerk of Court $100.00 per day beginning on July 7, 2025, until she fully complies with the Omnibus Order . . . ." *Id.* at *7. Following the July 7th Hearing, the Court entered the Contempt Order and found that the

---
[4] The Parties also acknowledged that there were no funds available to compensate a mediator.

5

Debtor was in civil contempt. However, the Court gave the Debtor one more chance to fully comply with the Omnibus Order before imposing sanctions and ordered that the July 21st Hearing take place two weeks later to assess compliance with the Contempt Order.

In the Contempt Order, the Court specified in greater detail what information the Debtor was required to produce to purge the civil contempt finding and to avoid the imposition of sanctions:

> [a]ll documentation regarding the Debtor's bank accounts and Holt Solutions, LLC's bank accounts for the period January 1, 2023, through June 30, 2025, including but not limited to:
> (i) Account statements for SouthState Bank account ending - 1022 for calendar year 2023 and the period beginning May 31, 2025, and ending June 30, 2025 and evidence of ownership of this account;
> (ii) Account statements for the account described as "Bluevine Bluevine" with regard to a $200 electronic debit from SouthState Bank account -1022 on March 19, 20241 and evidence of ownership of this account;
> (iii) Account statements for First Citizens Bank account -3485 and evidence of ownership of this account;
> (iv) Account statements for the account described as "Emergency fund 6207" on the April 2024 statement for Bluevine account ending -6199 and evidence of ownership of this account;
> (v) Evidence of ownership of Bluevine accounts -6181, -4692, and -6199;
> (vi) The lease agreement, including amendments, for 6415 Nevin Glen Drive, Charlotte, North Carolina; and
> (vii) All documentation regarding the courses that the Debtor has taken through the Debtor's asserted tribe.

[D.I. 132 at ¶ 2.] The Court also ordered that the Parties should file another status report prior to the July 21st Hearing.

## V. **Hearing on July 21, 2025**

Moments before the July 21st Hearing, the Parties filed a *Joint Report of Status of Debtor's Compliance with Order Finding Debtor in Civil Contempt* (the "Second Status Report"). [D.I. 136].[5] The Chapter 7 Trustee alleged that the Second Status Report was filed on such short notice

---

[5] Because the Second Status Report was filed approximately 22 minutes before the July 21st Hearing, the Court offered to give the Debtor time in a private conference room to review a printed copy of the Second Status Report, while the

6

because the Debtor provided a "substantial production" of 287 additional bank statements and 12 additional financial account disclosures, totaling thousands of pages, only four days before the July 21st Hearing. Ms. Culp asserted that she herself, along with the Chapter 7 Trustee and two staff members, spent the entire weekend pouring through the production to analyze what had been produced and what may be missing. Following that initial review,[6] the Chapter 7 Trustee asserted that the Debtor still had not produced all of the information required by the Omnibus Order and the Contempt Order (collectively, the "Court Orders"). Moreover, the Parties asserted that the Debtor's production included information that led to the discovery of additional financial accounts that the Parties were unaware of and that the Debtor had not previously disclosed, including a cryptocurrency account in the Debtor's name. The Parties alleged that some of these accounts contained funds—totaling in excess of $7,000—that the Debtor held on the Petition Date but, under penalty of perjury, did not disclose in her bankruptcy schedules, as is required by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

The Second Status Report also provided that the Debtor failed to comply with the Court Orders in the following ways:

1. The Debtor "failed to produce any statements for calendar year 2023 for SouthState Bank account -1022," [D.I. 136 at *3];

2. "On December 3, 2024, the Debtor transferred $450 from First Citizens Bank - 3485 by Zelle to an undisclosed account" and "failed to produce documentation regarding this account for the period January 1, 2023, through June 30, 2025;" *id.* at *4;

---

Court heard other matters that day. The Debtor exited and reviewed the Second Status Report before returning to the courtroom. Upon the Debtor's re-entry, the Court confirmed with the Debtor that she had sufficient time to review the Second Status Report.

[6] The Parties asserted that their review was ongoing and that they may supplement the Second Status Report if additional relevant information was found.

7

3. The Debtor "failed to produce documentation for a Coinbase account;" *id.*;

4. The Debtor "failed to produce documentation for the account described as "Bluevine, Bluevine;" *id.*;

5. The Debtor "failed to produce any documentation regarding the courses she has taken through her asserted tribe;" *id.*; and

6. The Debtor "failed to produce the October 2023 statement for Bluevine account -6207."

*Id.* The Parties requested in the Second Status Report that the "Debtor be ordered to immediately submit" the following information:

1. "[E]vidence of ownership" for the "newly disclosed Bluevine accounts -0652, -0686, -2802, and -3087," *id.* at *5; and

2. "[T]he May 2025 and June 2025 statements" for the "newly disclosed Bluevine account -6215" and for the "newly disclosed First Citizens accounts -3485 and -8116."

*Id.* Lastly, the Parties "request[ed] that the Court sanction the Debtor for failing to purge her contempt of the [Court] Order[s] and grant such other and further relief as may be just and proper." *Id.* The Parties then attached several exhibits to the Second Status Report, showing some documentation that had been received and documentation that is allegedly outstanding.

At the July 21st Hearing, the Debtor asserted that she had complied with certain portions of the Court Orders. When asked by the Court to provide any argument regarding the mitigation of sanctions, the Debtor acknowledged that she had "made mistakes" but that she was not at liberty to provide documentation from the Courses, asserting that she would violate federal law if she did so. When asked what law she would violate, the Debtor cited 11 U.S.C. § 541, 15 U.S.C. § 114, 17 U.S.C. §§ 504 and 505, 18 U.S.C. § 241, and the Indian Arts and Crafts Act. Of course, there is no

8

section 114 in title 15 of the United States Code, which exemplifies the Court's concerns with the Debtor citing non-existent legal authorities and perhaps receiving misleading legal advice from the jurisprudence course that the Debtor recently took.

The Debtor also said that the asserted tribe would "sue" her if the Debtor produced these documents to the Parties. The Court then engaged in the following exchange with the Debtor:

> **Debtor:** Through the order, Your Honor, I am being pressured and coerced into turning over this stuff that does not belong to me. Again, it belongs to the tribe and not myself. . . . And if I am being threatened with sanctions and punishment for something that isn't mine, then obviously this causes me duress, and I am being forced to make decisions under pressure, fear, and intimidation. So, I'm really caught in the middle of something that. Umm.
> **Court:** Ms. Ford. Has . . . the tribe said this to you? Because we have told you that this law you are citing is completely inapplicable. So, can you please provide a name of who you are speaking to at the tribe that is asserting any of those arguments?
> **Debtor:** Your Honor, I cannot say any of that, but what I can say is that this would be a-a-against the law for me to do so.
> **Court:** Who have you spoken to the tribe, in, during this process?
> **Debtor:** That, I will not disclose.
> **Court:** Has the tribe threatened you with a lawsuit?
> **Debtor:** Your Honor, that I will not disclose.

Prior to this exchange, the Debtor declined to provide any contact information for the asserted tribe or any individual affiliated with the asserted tribe. Following the July 21st Hearing, the Court took this matter under advisement.

## DISCUSSION

"Federal courts have the inherent power to order sanctions to preserve the integrity of the judicial process and to punish bad-faith conduct intended to delay or disrupt the course of litigation or to impede enforcement of a court order." *Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 267 (4th Cir. 2019) (citation omitted). But "[a] court's contempt power . . . cannot be exercised when there is [a] 'fair ground of doubt as to the wrongfulness of' the conduct in question." *Id.* 267–68 (quoting *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019)). "Thus, a party must be able to discern

from the language of a court's order the actions necessary to comply with the court's directive." *Id.* (citing *Taggart*, 587 U.S. at 561). "This standard is generally an *objective* one;" "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Taggart*, 587 U.S. at 561. Additionally, "federal courts, including bankruptcy courts, have inherent power to regulate practice in cases before them" and can "deal with abuses in practice under its inherent power." *Allen v. Pierce (In re Timmer)*, No. BAP AZ-04-1604-KMOS, 2005 WL 6960235, at *4 (B.A.P. 9th Cir. Sept. 29, 2005), *aff'd*, 381 B.R. 417 (B.A.P. 9th Cir. 2007) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991)).

Here, the standard has been met for the Court to impose sanctions on the Debtor. The Court first articulated what the Debtor needed to produce at the May Hearing and then in the Omnibus Order. To ensure that the Court's directive was clear, the Court detailed in the Court Orders what documentation the Debtor needed to produce, when the Debtor needed to produce this documentation, how the Debtor should produce this documentation, and to whom the Debtor should produce this documentation. Day after day, and hearing after hearing, the Debtor either refused or otherwise failed to produce this documentation to the Parties. As of the July 21st Hearing, the Debtor still had not produced all of the information required by the Court Orders.

The Parties acknowledged at the July 21st Hearing that the Debtor made a "substantial production" and that the Parties were still sorting through the information provided to them by the Debtor, so the Court does not believe that it is appropriate to sanction the Debtor regarding documentation that may have been in the Debtor's production to the Parties. However, at the same hearing, the Debtor explicitly refused to produce documentation related to the Courses. The Debtor also refused to answer the Court's questions about the Courses and who may be threatening her

10

with legal action, which she asserts are why she cannot turn over the Courses' documentation in compliance with the Court Orders.

The Court does not find credible the Debtor's assertions that she will be subject to legal action, given that (a) the Debtor has provided no evidence that the Courses' documentation is subject to any copyright; (b) the Court has ordered that the Courses' documentation be produced to the Parties; (c) the Debtor is actively defying the Court Orders by failing to produce the tribal documentation, which itself makes the Debtor subject to legal action; (d) the Court has informed the Debtor that this documentation can be submitted directly to the Parties (without being filed) and that a protective order may be entered, if necessary; (e) the Debtor refuses to provide the Court with any evidence or information to inform the Court who is threatening her with legal action; (f) the Debtor refuses to provide any contact information for someone who may be served with a request for the production of such documentation (and consequently be given an opportunity to object to the production) to allow the Debtor to potentially avoid this responsibility; and (g) the Debtor has continuously delayed the Parties from exercising their fiduciary duties in this case.

The Courses' documentation was requested, in part, to allow the Court to regulate the practice of law and potential abuses in practice against this Debtor by third parties.[7] These concerns relate to the length and complexity of the Debtor's pleadings, as well as the false factual information contained in some pleadings and the inapplicable or non-existent legal authorities cited therein, as was discussed at the July 21st Hearing. The Debtor's pleadings are atypical in all of these respects and raise questions concerning the source of this material. The Courses' information may provide insight in this regard.

---

[7] Additionally, the Court does not understand the nature of the financial relationship between the Debtor and individuals who are members of the asserted tribe. These concerns also necessitate a deeper investigation of the coursework, as the Parties' must understand the nature of monetary transfers related to the Courses if those transfers are to insiders.

11

As it relates to the undisclosed funds that the Parties recently discovered, the more than $7,000 in deposits are what the Parties are aware of at this time. Those deposits do not include any amount that the Debtor may have in any additional undisclosed accounts or any amounts that the Parties may discover when reviewing the recently disclosed bank statements. The failure to provide this information and other information on the Petition Date demonstrates a lack of good faith in the bankruptcy filing and also may constitute perjury on the Debtor's part.

Through these acts and omissions, the Debtor has impeded the enforcement of the Court Orders, delayed the progress of this case, and has disrupted the Parties' ability to fulfill their fiduciary duties.[8] There is no fair ground of doubt that the Debtor's failure to produce the Course's documentation is wrongful, as a reasonable person can discern from the language of the Court Orders the actions necessary to comply with the court's directive. The Debtor's subjective belief that she can defy the Court Orders by refusing to produce the Courses' documentation is unreasonable and upsets the Court's ability to regulate the practice of law in this case. The Debtor's failure to provide additional information related to her financial accounts, as is required by the Court Orders and by federal law, and her enormous pleadings with miscited law prohibit this case from moving forward in a timely manner. Therefore, the Court must act to preserve the integrity of the judicial process and impose sanctions to address this bad-faith conduct that is delaying and disrupting the progress of this case.

## ORDER

For the reasons set forth above, the Court **FINDS**, **DECREES**, and **ORDERS** as follows:

1. The findings of fact and conclusions of law made by the Court in the Court Orders are incorporated herein;

---

[8] The Parties both have fiduciary duties to the estate.

2. The findings and fact and conclusions of law made by the Court at the hearings on May 27, 2025; June 9, 2025; June 23, 2025; July 7, 2025; and July 21, 2025, are incorporated herein;

3. The Debtor continues to fail to fully comply with paragraph 6 of the Omnibus Order;

4. The Debtor has failed to fully comply with paragraph 2 of the Contempt Order;

5. The Debtor has acted in bad faith by failing to fully comply with the Court Orders;

6. The Debtor hereby is sanctioned and ordered to pay $100.00 per day to the Clerk of the United States Bankruptcy Court for the Western District of North Carolina, beginning on the date of entry of this order;

7. The Debtor shall submit evidence of ownership for the "Bluevine" accounts that assertedly end in the following numbers: -0652, -0686, -2802, and -3087;

8. The Debtor shall submit bank statements for May 2025 and June 2025 for the "Bluevine" account assertedly ending in the number -6215 and for the First Citizens accounts assertedly ending in the following numbers: -3485 and -8116;

9. The Debtor may purge the civil contempt and cease accruing the sanction of $100.00 per day once the Debtor comes into full compliance with the Contempt Order, Omnibus Order, and this order;

10. Once the Debtor comes into full compliance with the Contempt Order, the Omnibus Order, and this order, either the Debtor or the Parties shall file a statement indicating such compliance (the "Statement");

11. The Statement shall also indicate if the Debtor is unable to comply with paragraphs 7 and 8 of this order, if applicable;

12. The Parties shall have seven (7) business days from the filing of the Statement, if any, to object to the Statement ("<u>Objection</u>");

13. Should there be an Objection, the Parties shall file and attach a notice of hearing to the Objection and serve the notice with the Objection in accordance with the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court;

14. Should the Parties fail to timely file an Objection, the Court may immediately enter an order purging the civil contempt and ceasing the imposition of additional sanctions;

15. The Debtor's failure to comply with the Omnibus Order, the Contempt Order, or this order may result in the imposition of additional sanctions;

16. The Debtor is directed to and shall serve this order by mail on any parties that the Debtor is aware may contest the relief provided under this order, including the Debtor's asserted tribe, by **July 31, 2025**;

17. Pursuant to paragraph 16 of this order, by **August 4, 2025**, the Debtor shall file a certificate of service showing to whom the Debtor served this order, the address that the Debtor used to serve each of those individuals or entities, and the date that each of those individuals or entities was served with this order; and

18. The Court retains jurisdiction over any and all matters arising from or related to the interpretation and implementation of this order.

   **IT IS SO ORDERED.**

**This Order has been signed electronically.**  **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of this order.**